OPINION.
Davis, J.,
delivered the opinion of the court:
It is but simple justice to the counsel on both sides to say at the outset that the court has derived the greatest assistance from their able and full discussion of the complicated issues-involved in this case, both in their briefs and in their oral arguments.
The items in the claimant’s bill of particulars depend, in some-measure, upon the force to be given to a contract known as-contract No. 561.
In the autumn of 1871 the claimant offered to put the Canal road between Aqueduct and Chain Bridge in order. Apparently his terms were not acceptable, for no -notice was taken of them.
A year later the Board ordered that a contract should be awarded him for this work, and directed that he be notified of its action.
An attempt was made to connect this act with the claimant’s-acts of the previous year; but the findings show no such connection, and in our opinion there was none.
*327 The secretary of the Board at once wrote to the claimant, but instead of notifying him of the real doings of the Board, he notified him that a contract had been awarded him “ at Board rates,” which had not been: alluded 'to by the Board in their action.
~~ The claimant before commencing work saw the defendant’s officers in relation to the work and the contract, but what took place can only be inferred from subsequent acts of both parties.
The claimant did work to the-amount of a few thousand dollars in the autumn of 1872, for which he was paid in part. In the spring of 1873 he resumed work and continued at it until the autumn, when a final measurement was had of the work done to that time. For all this work he was paid at Board rates with two exceptions. 1st. He was paid for stone masonry at $5 per cubic yard, while the Board rate was $6.50 per perch. 2d. He was paid nothing for haul. So far as we can gather from the findings, his bills were rendered at the rates at which they were paid, and the payments were received without any intimation that the amounts allowed were too small.'
During the progress of the work the claimant had put macadam on the road by direction of one of the Board of Public Works. This was formally recognized as a part of his contract in November, 1873, and in December, 1873, the contract, No. 561, under which all the work was supposed to have been done, was formally executed.
The findings show that both parties intended to embody in this formal instrument, and supposed-they had embodied in it, all the agreements under which the one had been doing work and the other had been paying money. The instrument was antedated for the purpose, as the findings further show, of making it operative during the whole period of the work.
The claimant now, however, makes two objections to this instrument:
In the first place it was signed on behalf of the Board of Public Works by Henry D. Cooke, Alexander R. Shepherd, and James A. Magruder. Cooke was a member of the Board in October, 1872, when the contract with the claimant was actually. made, but he had ceased to bé a member in December, 1873, when the formal evidence of it was actually signed. Shepherd and Magruder were members throughout. The total num *328 ber of the Board was five. The claimant maintains that the instrument, not having been signed by a majority of the Board, is invalid.
It is unnecessary for us to decide whether he is correct in this contention, for the findings show that the claimant signed that paper for the purpose of showing what his own understanding of the contract was. If, notwithstanding the written instrument, the contract still rested in parol, the court could have no stronger evidence to show what the claimant intended it to be. If, on the other hand, the -written contract is valid, the practical result on the issues in this suit is the same.
In the second place, the claimant maintains that he engaged to do the work at Board rates; that when the written contract varied from Board rates by excluding haul, and paying masonry at only $5 a cubic yard, it was a variation made without his knowledge, and against the intent of both parties, and that these provisions of the contract having been inserted by mistake, the court should reform the contract by restoring Board rates as th§ measure of compensation.
This theory rests for its support upon — 1st. The letter of the secretary informing the claimant that a contract had been awarded him at Board rates; 2d. The testimony of the claimant that he supposed the rates stated in the written instrument were Board rates.
We have already seen that the letter of the secretary was not justified or authorized by the action of the Board. The claimant’s contention therefore rests mainly upon his own unsupported testimony. On the other hand, it is contradicted by his own consistent conduct, from October, 1872, when he began work under the original contract, to January, 1876, when he finished under the last extension of the contract. During all this time he rendered accounts and received pay for masonry at $5, and for grading without claiming haul. We cannot shut our eyes to these practical acts of construction. We think that before he began work he must have known that the secretary had made a mistake. We are also of opinion that when he signed the contract, in December, 1873, he knew what its purport was, and that it expresses the agreement as he understood it.
Having disposed of this general question, we will take up ■the items of the claim and counter-claim in detail.
*329 Tbe claimant’s bill of. particulars consists of fourteen items, thirteen of which are in the original petition and one in the amended petition.
Four of these were abandoned at the trial, namely:
•Stone excavation, 1,661.53 cubic yards of haul, as above, at 20.621 cents per cubic yard. $342 CO
114 cubic yards of masonry, at $5 per cubic yard. (See Exhibits No. 7,8, and 9).. 570 00
^Repairing road at above point. 41 00
120 cubic yards of cobble-stone used by overseer of ropairs, at 75 cents per cubic yard. 90 00
The item “Balance due on Conduit road, $325.67,” was amended at the trial so as to make it a claim for a receiving basin, $71.25. We do not find this claim to be sustained. •(Finding XXX.) '
There was also a claim made in the original petition for $33,679.54 for difference between the face value of certificates ■and the cash price for the work. In view of previous decisions, this claim was not pressed, and it is unsupported by proof. (Finding XXXVII.)
There was also a claim set up in the original petition for $1,328.47 for difference between the amount audited to the •claimant and the amount paid to him. We have disposed of .this by finding XVÍII, which states in substance that it is not sustained by proof.
We will take up the remaining items in classified chronological order, and consider them when pertinent to do so in connection with the counter-claims.
The following items stand by themselves and have no relation to the counter-claims:
33,232 cubic yards of haul 1,650 feet over 200 feet, at .011 cents per hundred feet, =.20.621 cents per cubic yard. |6,854 10
913.39 cubic yards of stone masonry, audited at $5 per cubic yard, which should have been at $6.50, the Board rates, making a difference of (see certificate of B. D. Carpenter, engineer iu charge of date February 4, 1876, marked Exhibit No. 4). 1,370 08
These claims are for work done before December, 1873, and are founded upon the alleged mistake as to the rates. For the reasons already given they cannot be allowed. The claimant received his contract price both for haul and masonry, and has no just claim to any further compensation for either.
The next of the series of claims grows out of an extension of *330 contract No. 561 so as to cover the construction of an expensive wall on the south side of the Canal road and the completion of' that road as a first-class road. It was made by the Commissioners after the abolition of the Board of Public Works, and was a much more extensive contract than the original.
Under this extension the claimant now makes the following-claims, which are set forth in his original petition:
492 cubic yards coping, which should have been measured as stone masonry, at $5 per cubic yard (see letter of petitioner of June 4, 1875, and answer of engineer thereto, of June 9, 1875, marked, respectively, Exhibits Nos. 5 and 6, and extension of contract before described). $2, 480 00
4,624 cubic yards of earth excavation necessary for foundation of retaining wall on Canal road, at 40 cents per cubic yard (see engineer’s measurement, Exhibit No. 10). 1,849 60
4,528 cubic yards of broken stone necessary for drainage back of' retaining-walls, at $4.50 per cubic yard (see voucher of engineer’s estimate, dated January 26,1876, voucher No. 1134, Exhibit No. 11).:.. 20,376 60>
And the following in his amended petition:
5,000 yards excavation for the purpose of constructing the lining in the rear of the retaining-walls, at 40 cents per cubic yard- if2,000 00'
In this connection the defendant sets up the following items-of counter-claim:
To overpayment by mistake of fact, on account of stone masonry in canal wall in excess of amount required by contract, 4,091.83 cubic yards, at $5. $20,459 15-
To overpayment on account of coping, amount paid in mistake of fact... $9,887 01
Correct amount due. 5, 320 68
Excess overpaid. 4,566 33". To overpayment by mistake of fact for grading:
Amount paid—
For excavation. 9,665 40
For haul. 7,893 41
17,558 81
Amount properly due 782 88
Excess overpaid 16,775 SJ
■ It will be observed that these claims and counter-claims relate to: 1st. The retaining-wall; 2d. The foundation for it; 3d. The lining back of it for drainage) 4th. The coping on it) and., *331 5tb. The grading of tbe road itseli. We will consider them in-that order.
1st. The wall. — The claimant makes no demand on this account. The defendant asks judgment for a large sum for alleged over-payment. The facts are briefly these (finding-XXIX):
The wall was some 3 miles iii length, and in some places as-much as 10 feet high. In the very outset the claimant varied from the plans and specifications by constructing it wider than-they called for. He gave his reasons for these changes to the-assistant engineers of the District and to the Commissioners,, and they assented to the change. - From time to time, during the work, measurements were taken and returned to the chief' engineer, and passed upon by him and payments made in accordance with them; 'and all these measurements included the variations thus made. The Commissioners knew of it and the reasons for it, and consented to it; the assistant engineers knew of it, and the engineer-in-chief might have known of it if he had paid personal attention to it. There was no attempt at concealment or fraud. When the final payment was made,, which is now sought to be recovered back, it was done with the knowledge of the Commissioners, and by personal direction of one of them, and with the knowledge and consent of Assistant Engineer Oertly, who was acting as chief in the absence of Mr. Hoxie. The ground of the defendant’s claim for repayment. is that the engineer-in-chief did 'not assent to the changes-which involved the construction of 4,091.83 yards of masonry beyond his plans. We think this claim cannot be maintained.
The defendant further maintains that in any event there is-an overmeasurement of 661 feet in this wall. In support of this contention it refers to a measurement made by McComb,. on behalf of the defendant, which is found to be less by that amount than Franklin’s measurement, on which the payment was made.
McComb’s testimony was given January 24,1882. On the-21stOtcober, 1882, the defendant called Franklin as a witness., and made no inquiry of him on this point, although he did inquire as to other mistakes. Under these circumstances we cannot set aside Franklin’s measurement and find a payment-made under it to have been made in mistake of fact.
*332 2d. The foundation for the wall. — The terms of the contract ¡must govern our decision. It required the claimant to—
Construct a stone retaining or parapet wall on tlio south side of the Little Falls road, between the Aqueduct and Chain Bridges, or at such points .along said road as may bo authorized by the Commissioners, at $5 per cubic yard. * * * The present retaining-walls to be removed to such depth from the top as may be directed, and the foundation inspected and approved by the engineer of theDistriet of Columbia before relaying the wall, whioh is to be done in cement mortar.
A portion of the new wall was constructed in places where -there was no old wall. It is admitted that the contract gives the claimant no claim for the labor in getting ready for the foundations in places where there was a previous wall. The ■claim is confined to excavation in places where there was no previous wall. The instrument extending the contract makes no other provision for payment except that already quoted. We are of opinion that it requires the claimant to do all the work neccessary for the finished masonry at the agreed price ■of $5, unless there is something in the old instrument which .gives him further pay for excavation.
Turning to that we find these provisions only: “Excavations ■and refilling, forty (40) cents per cubic yard, to be measured in •excavation only,’’ and “ grading (30) cents for each and every •cubic yard of earth, sand, or gravel excavated and hauled.”
It is plain that the provision in regard to grading does not apply to this case. We think it equally clear that the other •does not. This is not a case of excavation and refilling, like a sewer trench; and the rate of payment agreed upou for such double work is not applicable to this.
There being nothing in the old contract to control the plain ■language of the extension, we must decide against the claimant ■on this item.
3d. The lining hack of the icallfor drainage. — The specifications called for “a lining of coarse gravel twelve (12") inches in thickness carried up in rear of the retaining-wall,” and the ¡plans showed this in detail. There was no gravel along the .line of the road, and it was mutually agreed, during the construction of the work, that macadam material should be substituted for the gravel.
The contract is silent as to the rate of pay for this work, 'which has been satisfactorily performed.
*333 The defendant maintains that it was intended to be paid for-by the price allowed for the masonry in the wall.
The claimant contends that he is entitled to compensation. 1st. For the labor in excavating the place for the reception of" the lining at the rate allowed by the old contract for excavations and refilling; 2d. For the lining to be measured as masonry.
It is plain that this work of graveling in the rear of the wall,, as contemplated by the contract, was a work of considerable-labor and expense. We cannot think that either party intended it to be paid for in computing thb masonry. In our opinion it is a casus omissus. The parties have accidentally-neglected to fix a price for this work.
The claimant has done the work; the District has received', the benefit of it; and it only remains for the court to examine-the findings and ascertain whether they furnished the means-for fixing its value.
In finding XXYI will be found the final measurement of the work done under this contract certified to by Mr. Bodfish, assistant engineer, and Mr. O'ertly, assistant engineer for the lieutenant engineer. This measurement contains the following item: “4,528 cubic yards,of broken-stone filling, at $1.25,. $5,660, if allowed.”
The item was not allowed at that time. The court allows it now. as the measure of the amount of such filling, and of its, value, and in. full for the demands in the claimant’s petition and amended petition, on account of such filling, and of the-excavation for it.
4th. The coping on the wall. — The contract called for a—
Coping to consist of selected stones six to ten inches thick, jointed; iru length of not less than two feet, and must project over the parapet wall not less than two nor more than four inches on each side, and must he so. disposed along the line of the wall that no two in juxtaposition shall vary in thickness nor in width more than three-quarters of an inch.
After laying about a thousand feet of this coping, the claimant wrote to the Commissioners that it was expensive, arduous,, and unsatisfactory work to make such coping, and made a proposition in the following language:
That I he allowed to use for the coping North River or other suitable coping stone, for which I will he allowed an extra compensation of forty- *334 '(40) cents per foot. This stone will cost me, delivered on the ground, nearly one (1) dollar per foot, but I am willing to bear more than one-half the expense, only asking the District government, to assume the proportion I have named.
To this proposition Mr. Hoxie, on behalf of the District, made the following reply:
You are requested to call at this office to execufco the necessary papers for .an extension to your contract, No. 561, with the late Board ofPublic Works, to include the finishing of the parapet wall along tho Little Falls road with North River coping, at forty cents per lineal foot, payable in 3.65 bonds at par.
» The claimant dicl not call and execute the proposed extension, but instead thereof went on with the proposed change, .and the courtis now called upon from this correspondence and the acts of the parties to decide what their agreements really were.
Assuming the average thickness of the coping called for by the contract to be 8 inches and its average width to be 30 inches, the contract price for it, viz, $5 per cubic yard, would amount to 30.8 cents per running foot.
The diminution in the size caused by using North Eiver blue-stone, taking Hoxie’s measurements in finding XXVIII, reduced the contract price for it, measured as masonry, to about 15.4 cents per running foot.
As some compensation for this reduction, as well as the in■creased cost of the proposed change (estimated by the claimant .at nearly $1 per foot), the claimant proposed that he should be allowed an extra compensation of 40 cents per foot.
He did not indicate whether he meant 40 cents per square foot or 40 cents per lineal foot. He now says that he intended square feet, and argues that the engineer must have so understood him, because any other construction would be inconsistent •with the prices of blue-stone.
Lieutenant Hoxie’s answer may be construed in two ways: 1st, either as an acceptance of the claimant’s proposition, defining the undefined term in it to be a lineal and not a square foot; or, 2d, as a counter proposal of 40 cents a running foot as the entire compensation. We think the first construction the one most consistent with the facts in the case, and the one which gives force to the whole correspondence. It is also the •only one consistent with the action of Lieutenant Hoxie at a ..subsequent stage, when he sanctioned a measurement of the *335 work which contemplated an allowance to the claimant for the coping as masonry and an additional payment by the foot. (Finding XXVIII.)
When the parties came to settle after the work was done "both agreed that the claimant was entitled to be paid for the •coping'as masonry (which we have seen to be about 15.4 cents per running foot), and at as high a rate as 40 cents extra per lineal foot, or an aggregate of about 55.4 cents per running foot. The claimant contended that he was entitled to a gross allowance of 40 cents per square foot, which, allowing the coping to be 2 feet wide, would be 40 cents a running foot additional, or about 95.4 cents per running foot. The parties comprised by fixing upon a rate of 74J cents a running foot. We •cannot say that this payment was made in mistake of fact. We think that it was made and received as a settlement of a disputed item, Regarding it in this light, we can neither on the «one hand set aside the payments already made to enable the defendant to recover on its counter-claim, nor can we on the •other hand award to the claimant-the contract price for the coping as masonry, since the claim for it, however well founded it may have been originally, entered into the settlement by which both parties accepted a rate of compensation which neither contemplated when the work was done.
5th. The grading of the road. — The claimant demands nothing-further for grading this road. The defendant asks to recover back $16,775.93, which it says was overpaid by mistake of fact for excavation and for haul in grading.
In the final- measurement of the work by Mr. Oertly in January, 1876, which is set fortli in finding XXVI, the' claimant was allowed for 32,218 cubic yards-of grading and for a similar amount of haul. The material in these two items was the same.
The defendants first contend that 15,185.82 cubic yards of this material was wrongfully allowed by mistake as grading and haul, because, they say, it was allowed and paid for as macadam, and constituted a part of the 45,557.47 square yards of macadam measured and allowed in the same measurement. The court has in finding XXIX found this to be so.
The defendant further contends that 14,422 cubic yards of the grading aud haul allowed in said measurement was in fact filling under the gutters, which by the extension of the contract *336 was to be done without charge. As to this the court has found: that it does not appear that there was any mistake of fact in. that measurement.
The result is that the court allows the defendant for one payment by mistake of fact.
For 15,185.82 cubic yards grading, at 30 cents. $4,555 75
For 15,185.82 cubic yards haul, at 24£ cents. 3,720 53
8,276 28
The next items in consecutive order relate to what is known as the New Out road, a road near to and connected with the Oanal (or Little Falls) road, on which the claimant was at work, in August, 1875.
It appears that this New Out road was badly damaged by storms in that month. The three years’ experience which the District authorities had had at that time with the claimant as-a contractor appears to have inspired confidence, and in the emergency Mr. Hoxie addressed the following letter, on the 31st August, to the claimant:
You are authorized to repair the roads and culverts in the vicinity of the-work now being performed by you along the Little Falls road, which have been damaged by the late storms, as extra work under your contract No. 561 with the late Board of Public Works. You will present this order with-your bill for the work, which will he done under the direction of Mr. Cunningham and Mr. Carroll, overseers.
No answer was made to this communication, but as the claimant at once went on with the work he must be presumed to have accepted the proposal.
In December he rendered an itemized bill, amounting in the-aggregate to over $15,000, and asking for measurement and payment under his contract. This contract called for payment-in cash. The defendant had no cash.' Under direction of the Commissioners a bill was made out and certified to at rates, which produced an aggregate that would make a payment in certificates equivalent to a payment of the bill rendered in cash, and the claimant was so paid in certificates.
We do not apprehend that there was anything immoral or-intrinsically dishonest in this transactiou. The parties assumed what was a manifest fact, that work to be paid fer in-depreciated securities was nominally worth higher rates than work to be paid for in cash. But the act was clearly illegal». The defendant, having agreed to pay cash, was legally bound. *337 to pay cash; but wbeu it found itself unable to do so, tbe law forbade it from parting with its securities to a creditor at less than par. It is too clear for argument that what it did was an attempt to do indirectly what the law forbade it to do directly, which a familar rule of law makes an impossibility.
This payment in certificates to the amount of $22,182.92 must therefore be taken to be a cash payment to that amount on ■account of the work done on the New Out road. It is the only payment that has been made on that account. Our labors in this respect are, therefore, now reduced to ascertaining the amount of the work done by the claimant on that road.
On the 14th December, 1876, Lieutenant Hoxie addressed to the Commissioners a letter in which he said:
-I transmit herewith final measurement of-'work done on New Cut road hy J. J. Shipman, under contract No. 561 of the late Board of Public Works, amounting to $34,352.29.
The measurements inclosed in this letter show the following apparent variations from contract rates: An allowance of $6.50 for masonry, and an allowance for haul. The counsel for the defendant ask us to strike these items from the measurement.
These measurements were made after the present controversy arose, and undoubtedly express Lieutenant Hoxie’s well-considered judgment as to the claimant’s rights. There may have been good reason for allowing the haul, and the masonry may have been of a different quality from' the rubble cement, for which the contract fixes the price at $5. We are not disposed to assume the responsibility of changing these items.
Among the items included in'this measurement were 1,090.8 perches of dry wall. The contract fixes no price for such labor and material. Lieutenant Hoxie estimates it to be worth $2.50 per perch, and allows that rate. The claimant contends that it is worth more than that, and introduced considerable proof to sustain his contention. We have reached the conclusion that the rate allowed by Lieutenant Hoxie is below the prices paid for such wall at the time of its construction, and have found that it was worth $3.50 per perch, instead of $2.50, as allowed.
As the result of this we disallow the counter-claim on account *338 of tbe work on the New Cut road, and allow the claimant as follows:
Work done as by Iloxie’s estimate. $24,352 50
1,068.8 perches dry wall, $1 per perch additional. 1,098 80
25,451 30
Less payments in certificates at par. 22,182 92
3,268 38
The judgment of the courtis as follows:
The court orders, adjudges, and decrees that the contract between the claimant and the defendant referred to in claimant’s petition as contract No. 561 correctly and truly sets forth the understanding and intention of the parties, and has not by accident, inadvertence, mistake, or clerical error failed to set forth the same, and ought not to be reformed.
And the court further orders, adjudges, and decrees that the claimant has established the following items of claim against the defendant set forth in his petition or the several amendments thereto, to wit:
A claim on account of 4,528 cubic yards of broken stone for drainage back of retaining-walls, at $1.25 per cubic yard. $5,660 00
A claim on account of balance due for work on tie New Cut road. 3,268 38
Making a total of. 8,928 38
And has failed to establish the residue of the claims set forth in said petition and amendments.
And the court further orders, adjudges, and decrees that the defendant has established the following items of counter-claim against the claimant, to wit:
Overpayment by mistake of fact for 15,185.82 cubic yards of grading on the Canal road, at 30 cents per cubic yard.$4,555 75
Overpayment by mistake of fact for 35,185.82 cubic yards of haul on said Canal road at 244 cents per cubic yard... 3,720 52
Making a total of. 8,276 27
And has failed to establish the residue of the counter-claims set forth in its bill of particulars. ,
And the court further orders, adjudges, and decrees that the claimant shall have and recover of the defendant the sum of $652.11, as due and payable on the 1st of January, 1876, being the difference between the said amount of claim allowed to the *339 claimant and the said amount of counter-claim allowed to the defendant.
And the court further orders, adjudges, and decrees that except as to the said amount of claims So allowed to the claimant all the claims demanded in the ^claimant’s petition and the amendments thereto be disallowed, and the petition with reference to all the. disallowed claims be "dismissed.
And, further, that except as to the said amount of counterclaims so allowed to the defendant the defendant’s counterclaims be dismissed.